UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY WEISS, *on behalf of himself and the Class*,<br><br>Plaintiff,<br><br>vs.<br><br>STARR RESTAURANT ORGANIZATION, LP d/b/a STARR RESTAURANTS, BUDDAKAN NY, L.P. d/b/a BUDDAKAN, HAVATEQUILA RESTAURANT PARTNERS, LLC d/b/a EL VEZ, ERY NORTH TOWER RHC TENANT LLC d/b/a ELECTRIC LEMON, DR. HOWARD DR. FINE, LLC a.k.a. HOWARD FINE LLC d/b/a LA MERCERIE, MOE LARRY CHEESE, LLC d/b/a LE COUCOU, MORIMOTO NY VENTURE, L.P. d/b/a MORIMOTO, TRAIN DESIGN, LLC d/b/a PASTIS, SUR ORGANIZATION, LLC d/b/a THE CLOCKTOWER, 26TH STREET RESTAURANT, LLC d/b/a UPLAND, SRHG WEST, LLC d/b/a VERONIKA, STEPHEN STARR, ALLAN DOMB, DAVID ROBKIN, and JENNIFER ROBKIN,<br><br>Defendants. | Case No.: 1:20-cv-08090-JMF |

**MEMORANDUM OF LAW IN SUPPORT OF THE INDIVIDUAL DEFENDANTS'
AND NON-EMPLOYER DEFENDANTS' MOTION TO DISMISS**

Eli Z. Freedberg
William H. Ng
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
(212) 583-9600

Shabri Baliga
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH 43215
(614) 463-4201

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS .................................................................... 2

III.  STANDARD OF REVIEW ........................................................................................ 4

IV.   PLAINTIFF'S CLAIMS AGAINST THE NON-EMPLOYER DEFENDANTS
      SHOULD BE DISMISSED ........................................................................................ 5

      A.    The Complaint Fails to Plausibly Plead That The Non-Employer
            Defendants Are Plaintiff's Employer.......................................................... 5

      B.    The Complaint Also Fails to Plausibly Plead That The Non-Employer
            Defendants Are Part Of A "Single Integrated Enterprise" With Buddakan .......... 7

V.    PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
      SHOULD ALSO BE DISMISSED................................................................................ 13

VI.   CONCLUSION............................................................................................................ 15

CERTIFICATE OF SERVICE ............................................................................................. 16

TABLE OF AUTHORITIES

PAGES

CASES

*Anderson v. Abbott*,
  321 U.S. 349 (1944).................................................................................7

*Apolinar v. R.J. Restaurant, LLC*,
  No. 15-cv-8655, 2016 WL 2903278 (S.D.N.Y. May 18, 2016) ...................................9, 12, 14

*Arculeo v. On-Site Sales & Mktg.*,
  425 F.3d 193 (2d Cir. 2005).........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................4, 5, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007)..........................................................................4

*Benzinger v. Lukoil Pan Ams.*,
  447 F. Supp. 3d 99 (S.D.N.Y. 2020)...............................................................12

*Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr.*,
  687 N.Y.S.2d 667, 669 (2d Dep't 1999).............................................................5

*Bonito v. Avalon Partners*,
  967 N.Y.S.2d 19 (1st Dep't 2013) ..................................................................6

*Bravo v. Established Burger One*,
  No. 12-cv-9044, 2013 WL 5549495 (S.D.N.Y. Oct. 9, 2013)..............................................14

*Brown v. Netflix*,
  462 F. Supp. 3d 453, 458-459 (S.D.N.Y. 2020) .......................................................5

*Bynog v. Cipriani Grp.*,
  770 N.Y.S.2d 692 (N.Y. 2003) .....................................................................6

*Cannon v. Douglas Elliman, LLC*,
  No. 06-cv-7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)..............................................14

*In re Domino's Pizza, Inc.*,
  No. 16-cv-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018)..............................................10

*Ebomwonyi v. Sea Shipping Line*,
  — F. Supp. 3d —, 2020 WL 4194727 (S.D.N.Y. July 21, 2020).........................................4, 5

*Halebian v. Berv*,
  644 F.3d 122, 130 (2d Cir. 2011)....................................................................5

TABLE OF AUTHORITIES
(CONT'D)

PAGES

*Hart v. Rick's Cabaret Int'l*,
   967 F. Supp. 2d 901 (S.D.N.Y. 2013)..........................................................................6

*Huang v. Shanghai City Corp.*,
   459 F. Supp. 3d 580 (S.D.N.Y. 2020).......................................................11, 12, 13

*Ivanov v. Builderdome, Inc.*,
   No. 19-cv-3422, 2020 WL 5768691 (S.D.N.Y. Sept. 28, 2020) ...............................6

*Kwan v. Sahara Dreams Co. II*,
   No. 17-cv-4058, 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018) .......................12, 13

*Lopez v. Acme Am. Envt'l Co.*,
   No. 12-cv-511, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)...................8. 9, 12, 14

*Meirmaris v. Braich*,
   No. 06-cv-7790, 2011 WL 13128211 (S.D.N.Y. Aug. 1, 2011).................................5

*Murphy v. Lahaunie*,
   No. 13-cv-6503, 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016).................................6

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996)....................................................................................7, 8

*Nielsen v. Rabin*,
   746 F.3d 58 (2d Cir. 2014).......................................................................................5

*Parker v. Columbia Pictures Inds.*,
   204 F.3d 326 (2d Cir. 2000)..................................................................................7, 8

*Santana v. Fishlegs, LLC*,
   No. 13-1628, 2013 WL 5951438 (S.D.N.Y. Nov. 7, 2013)......................................9

*Skanska USA Bldg. v. Atlantic Yards B2 Owner*,
   40 N.Y.S.3d 46 (1st Dep't. 2016), *aff'd.*, 31 N.Y.3d 1002 (N.Y. 2018), *reh'g
   denied*, 31 N.Y.3d 1141 (N.Y. 2018)........................................................................7

*Solis v. ZEP LLC*,
   No. 19-cv-4230, 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020).......................10, 13

*Villager Pond, Inc. v. Town of Darien*,
   56 F.3d 375, 378 (2d Cir. 1995)...............................................................................5

*Yeh v. Han Dynasty, Inc.*,
   No. 18-cv-6018, 2019 WL 633355 (S.D.N.Y. Feb, 14, 2019) .........................10, 14

iii

TABLE OF AUTHORITIES
(CONT'D)

PAGES

**STATUTES**

Fair Labor Standards Act ("FLSA") ......................................................................................6, 9, 11

New York Labor Law ("NYLL") .................................................................................... passim

N.Y. LAB. LAW § 2(7) ...............................................................................................................6

N.Y. LAB. LAW § 663(1) ............................................................................................................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................................5

https://www.ny1.com/nyc/all-boroughs/news/2020/02/12/morimoto-closing-
  chelsea-market-restaurant-location (last visited Oct. 18, 2020) ...............................................1

## MEMORANDUM OF LAW

Defendants Havatequila Restaurant Partners, LLC; Ery North Tower RHC Tenant LLC; Dr. Howard Dr. Fine, LLC; Moe Larry Cheese, LLC; Morimoto NY Venture, L.P.; Train Design, LLC; Sur Organization, LLC; 26th Street Restaurant, LLC; and SRHG West, LLC (the "Non-Employer Defendants"), together with Defendants Stephen Starr, Allan Domb, David and Jennifer Robkin (the "Individual Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the claims made against them in this lawsuit.

## I.   PRELIMINARY STATEMENT

Non-moving defendant Buddakan NY, L.P. ("Buddakan") is a restaurant located in New York City. Plaintiff alleges he worked as a server at Buddakan from February 2014 to October 2014 (Doc. 1-1 at ¶ 40). Now some six years later, and based on his stale "direct observations and conversations with his [then] coworkers," Plaintiff brings suit under the New York Labor Law ("NYLL") to complain about Buddakan's wage and hour practices (*Id.* at ¶¶ 47, 56-64).

Plaintiff, however, does not merely name Buddakan as the defendant. Buddakan is affiliated with the Starr Restaurant group, including co-defendants Starr Restaurant Organization, L.P. ("SRO") and restaurateur Stephen Starr. SRO, in turn, is affiliated with a number of other restaurants and restaurant groups in Florida, New York, New Jersey, Pennsylvania, and Washington D.C. Plaintiff names every one of this group's New York restaurants , claiming they are all somehow collectively run along with Buddakan "as a single integrated enterprise" by SRO (Doc. 1-1 at ¶ 24).[1] Moreover, Plaintiff—who was never employed by or worked at any of the Non-Employer Defendants' restaurants—offers nothing more than boilerplate and conclusory

---

[1]      Defendant Morimoto NY Venture, L.P. was forced to permanently close its New York location in May 2020, due in part to the Covid-19 pandemic. *See, e.g.*, https://www.ny1.com/nyc/all-boroughs/news/2020/02/12/morimoto-closing-chelsea-market-restaurant-location (last visited Oct. 18, 2020).

allegations regarding the Non-Employer Defendants' and Individual Defendants' alleged involvement in Buddakan's wage and hour practices. His complaint does not plead facts sufficient to render plausible the notion that the Non-Employer Defendants or Individual Defendants exercised any formal or functional control over him. His complaint also fails to plead facts plausibly suggesting that the Non-Employer Defendants and Individual Defendants are part of some "single integrated enterprise" responsible for his years' old claims of being subjected to tip-credit, time-shaving, and spread-of-hour violations while working at Buddakan during 2014. Plaintiff's claims against the Non-Employer Defendants and Individual Defendants should therefore be dismissed, for his failure to plausibly plead claims against them.

## II.     STATEMENT OF RELEVANT FACTS

Plaintiff Gregory Weiss brings this putative NYLL class action against the Non-Employer Defendants and Individual Defendants, as well as SRO and his former employer, Buddakan, for various NYLL wage and hour violations (Doc. 1-1 *passim*). For a brief period during 2014, Plaintiff was employed as a server at Buddakan (*Id.* at ¶ 40). Despite the fact that Plaintiff does not claim to have worked at any of the Non-Employer Defendants' restaurants, and does not claim to have ever had any direct interaction with the Individual Defendants (*id. passim*), Plaintiff claims in a conclusory fashion that they, along with Buddakan and SRO, were all  collectively his "employer," entitling him to bring suit not only on behalf of Buddakan's non-exempt employees, but also on behalf of the employees of the Non-Employer Defendants (*Id.* at ¶¶ 6-7, 24, 30).

Specifically, Plaintiff attempts to justify naming so many defendants by claiming they are all operated as part of "a single integrated enterprise" along with SRO and Buddakan (Doc. 1-1 at ¶ 6). But his allegations in this regard are conclusory and scarce. With respect to the Non-Employer Defendants, Plaintiff alleges:

6. The Restaurants are operated by Defendants as a single integrated enterprise, for the purposes of the New York Labor Law ("NYLL"). The Restaurants are commonly owned by Defendants. The Restaurants operate on the same platform: https://starr-restaurants.com/. This website provides links to all Restaurants that operated under its banner . . . Specifically, the bottom of the websites of all Restaurants make it clear they are affiliated with Starr Restaurant Group, with its logo in clear view. . . .

7. The Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

   a. Supplies are interchangeable among the Restaurant locations;

   b. Employees are interchangeable among the Restaurant locations; and

   c. The Restaurants share payroll methods and have a single, centralized system of labor relations for employees.

(Doc. 1-1 at ¶¶ 6-7). A reader of Plaintiff's complaint who awaits factual elaboration will be disappointed—rather than providing factual elaboration to these claims, Plaintiff repeats these conclusory statements several paragraphs later:

24. At all relevant times, Defendants have operated their restaurants as a single integrated enterprise. Defendants' restaurants are engaged in the same activities, share common ownership, and have a common business purpose. Defendants maintain a centralized organizational structure, control, and human resources [sic] and implement consistent wage and hour policies, procedures, and employment practices across all of their Restaurants. Employees are interchanged among and transferred between Defendants' restaurants, as well as supplies. Defendants' restaurants are marketed jointly on Defendants' website, https://starr-restaurants.com/, which lists all restaurant locations. Corporate Defendants link to a shared Twitter page and LinkedIn page from their website.

(*Id.* at ¶ 24).

The allegations against the Individual Defendants are equally conclusory, and offered against each of them in a uniform, boilerplate fashion.  With respect to each of the four Individual Defendants, Plaintiff alleges:

> Individual Defendant [NAME] is a principal of Corporate Defendants and has operational control of the Restaurants.  At all relevant times, Defendant [NAME] has and exercised control over the employment terms and conditions of Plaintiff and Class members.  With respect to Plaintiff and Class members, Defendant [NAME] had and exercised the power and authority to (and could also delegate to managers and supervisors the power to) (i) hire and hire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment.  At all times employees could complaint to Defendant [NAME] directly regarding any of the terms of their employment, and Defendant [NAME] would have the authority to effect any changes to the quality and terms of their employment.  Defendant [NAME] exercised functional control over the business and financial operations of Corporate Defendants and had authority over all employee-related decisions including payroll, personnel, and wage and hour policies concerning Plaintiff and Class members.  Defendant [NAME] ensured the business was operating efficiently and profitably.  Defendant [NAME] possesses the power and authority to supervise and control supervisors of Plaintiff and Class members and can reprimand employees.

(Doc. 1-1 at ¶¶ 19-22).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]," bare assertions and unsupported conclusions will not suffice.  *Id.* at 678, 681.  To avoid dismissal, a plaintiff must support his claims with sufficient factual allegations "to show 'more than a sheer possibility that a defendant has acted

4

unlawfully.'" *Ebomwonyi v. Sea Shipping Line*, — F. Supp. 3d —, 2020 WL 4194727, at *3 (S.D.N.Y. July 21, 2020) (quoting *Iqbal*, 556 U.S. at 678).

"The question on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Brown v. Netflix*, 462 F. Supp. 3d 453, 458-459 (S.D.N.Y. 2020) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "The purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Id.* (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)). The party opposing dismissal "must do more than simply show that there is some metaphysical doubt as to the material facts." *Ebomwonyi*, 2020 WL 4194727, at *4 (quotation omitted). Accordingly, when ruling on a motion to dismiss, the court accepts all of a complaint's well-pleaded factual allegations as true and draws all reasonable inferences from them in the plaintiff's favor, while giving no "credit [to] conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

## IV.   PLAINTIFF'S CLAIMS AGAINST THE NON-EMPLOYER DEFENDANTS SHOULD BE DISMISSED

### A.   The Complaint Fails to Plausibly Plead That The Non-Employer Defendants Are Plaintiff's Employer

All of Plaintiff's claims arise under the NYLL (Doc. 1-1 *passim*). To successfully state a NYLL claim, a plaintiff must demonstrate, *inter alia*, "that he or she is an employee entitled to its protections." *Meirmaris v. Braich*, No. 06-cv-7790, 2011 WL 13128211, at *5 (S.D.N.Y. Aug. 1, 2011) (quoting *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr.*, 687 N.Y.S.2d 667, 669 (2d Dep't 1999); *see also* N.Y. LAB. LAW § 663(1) (authorizing civil actions by "employee[s]" against "employers" who violated the NYLL's wage provisions). A company "employs" an individual if

5

it "permit[s] or suffer[s]" that individual to work.  N.Y. LAB. LAW § 2(7).  While Plaintiff's burden is "substantially similar" to that he would face under the Fair Labor Standards Act ("FLSA"), the NYLL inquiry "focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation."  *Hart v. Rick's Cabaret Int'l*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quotation omitted).

Under the NYLL then, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Bynog v. Cipriani Grp.*, 770 N.Y.S.2d 692, 695 (N.Y. 2003) (collecting cases); *see also Ivanov v. Builderdome, Inc.*, No. 19-cv-3422, 2020 WL 5768691, at *4 (S.D.N.Y. Sept. 28, 2020) ("The critical inquiry in determining whether an employment relationship exists [under the NYLL] pertains to the degree of control exercised by the purported employer") (quotation omitted).  Courts have identified a variety of factors to aid in resolving this inquiry, including whether the purported employer "hired and fired employees, supervised and controlled employees' work schedules, determined the method and rate of pay, kept employment records, and approved any vacations."  *Bonito v. Avalon Partners*, 967 N.Y.S.2d 19, 20 (1st Dep't 2013); *accord Murphy v. Lahaunie*, No. 13-cv-6503, 2016 WL 1192689, at *6 (S.D.N.Y. Mar. 22, 2016) (discussing factors for determining employment under NYLL).

Here, however, Plaintiff offers no allegations suggesting—let alone plausibly demonstrating—that each of the Non-Employer Defendants was his employer.  Plaintiff instead acknowledges that he worked only for Buddakan, and even then only for brief period during 2014 (Doc. 1-1 at ¶ 40).  He does not allege that he ever worked for any of the Non-Employer Defendants (*Id. passim*).  Plaintiff does not allege that the Non-Employer Defendants controlled his work schedule at Buddakan, or determined his method and rate of pay at Buddakan (*Id. passim*).  Nor

6

does Plaintiff allege that any of the Non-Employer Defendants maintained his employment records, or approved his vacation requests (*Id. passim*).  At bottom, Plaintiff fails to allege anywhere in his complaint that the Non-Employer Defendants exerted any control over the terms and conditions of his employment.  Plaintiff, therefore, has failed to plausibly allege that any—let alone all—of the Non-Employer Defendants were his employer.

>    **B.      The Complaint Also Fails to Plausibly Plead That The Non-Employer Defendants Are Part Of A "Single Integrated Enterprise" With Buddakan**

Plaintiff claims all nine of the Non-Employer Defendants should be held liable along with SRO and Buddakan as his employer under a "single integrated enterprise" theory (Doc. 1-1 at ¶¶ 6-7, 24).  Under that doctrine, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a large 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Arculeo v. On-Site Sales & Mktg.*, 425 F.3d 193, 198 (2d Cir. 2005).  A plaintiff can invoke this doctrine by proving "participation by the defendant that is sufficient and necessary to the total employment process of the employer." *Parker v. Columbia Pictures Inds.*, 204 F.3d 326, 341 (2d Cir. 2000) (internal quotation marks and brackets omitted).  Because the doctrine "is an exception to the doctrine of limited [corporate] liability," and essentially a form of corporate veil-piercing, the Second Circuit has recognized that the doctrine is a remedy that under New York law should be applied only "under extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404-05 (2d Cir. 1996); *accord Anderson v. Abbott*, 321 U.S. 349, 361-62 (1944) ("Normally the corporation is an insulator from liability on claims of creditors…. Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted."); *Skanska USA Bldg. v. Atlantic Yards B2 Owner*, 40 N.Y.S.3d 46, 53-54 (1st Dep't. 2016) ("Veil-

piercing is a narrowly construed doctrine" imposing a "heavy burden" on a plaintiff to "show[] that: (1) the owners exercised complete domination of the corporation" and "such domination was used to commit a fraud or wrong against the plaintiff"), *aff'd.*, 31 N.Y.3d 1002 (N.Y. 2018), *reh'g denied*, 31 N.Y.3d 1141 (N.Y. 2018).

Determining whether multiple entities should be regarded as a single integrated enterprise requires consideration of four factors: whether the entities have "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Murray*, 74 F.3d at 404. But these factors are not assessed in general terms. Instead, each factor should be evaluated for evidence of common, shared control of a plaintiff's employment, as even "companies that are part of an 'integrated enterprise' . . . may nevertheless employ separate people and, *absent control*, are not liable for the separate employees." *Lopez v. Acme Am. Envt'l Co*., No. 12-cv-511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012). Accordingly, "[a]llegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled [p]laintiffs as employees." *Id.* (collecting cases); *see also Murray*, 74 F.3d at 405 (integrated enterprise liability should be applied only where a plaintiff demonstrates other entities "share[d] decisionmaking authority with" his employer with respect to his employment); *Parker*, 204 F.3d at 341 (a plaintiff must demonstrate "participation by the defendant" in his or her "total employment process").

This Court has repeatedly dismissed claims seeking to apply the single integrated enterprise doctrine to brother-sister restaurants within restaurant chains and groups, most often because the plaintiffs—while offering allegations of common ownership, joint marketing, use of common websites and centralized payroll—failed to offer specific, plausible allegations explaining how the

sister restaurants "exercised. . . . **control** over the [p]laintiffs." *Lopez*, 2012 WL 6062501, at *5 (emphasis added).

In *Santana v. Fishlegs, LLC*, for example, the plaintiffs asserted wage and hour claims against seven corporate entities, each of whom operated a restaurant owned by restauranteur David Burke. *Santana v. Fishlegs*, No. 13-1628, 2013 WL 5951438, at *1 (S.D.N.Y. Nov. 7, 2013). The named plaintiffs had worked at only two of those restaurants; nevertheless, they sought to assert collective and class allegations under the FLSA and NYLL on behalf of employees at all of the restaurants, under a single integrated enterprise theory. *Id.* Despite allegations that all of the restaurants "engage[d] in joint advertising and marketing, share[d] human resources and legal personnel, jointly solicit[ed] job applicants, and pa[id] their employees with the same payroll methods" (*id.*), Judge Schofield dismissed the restaurant entities that never employed the named plaintiffs, concluding that the named plaintiffs had failed to plausibly allege common employment practices across all of the named defendants. *Id.* at **5, 8.

Similarly, in *Apolinar v. R.J. Restaurant, LLC*, the named plaintiffs worked for an entity who operated one location of the "Toasties" restaurant group. *Apolinar v. R.J. Restaurant, LLC*, No. 15-cv-8655, 2016 WL 2903278, at *1 (S.D.N.Y. May 18, 2016). Despite having worked at only one Toasties restaurant, the plaintiffs filed an FLSA collective and NYLL class action wage and hour suit against all of the entities who operated Toasties locations in New York City, claiming they were part of a single integrated enterprise. *Id.* at *1. Despite alleging that the entities "share[d] common management, centralized control of labor relations, common ownership" and used a "common website" (*id.*), Judge Forrest dismissed the entities that owned and operated Toasties locations that never employed the named plaintiffs. *Id.* at *4-5. Judge Forrest concluded that not only where the named plaintiffs' allegations concerning those entities "conclusory" (*id.* at

*4), but "[t]heir allegations entirely leave out the relationship that plaintiffs, as employees, had to the Toasties locations besides the one location at which plaintiffs actually worked."  *Id.* at *4.

Judge Nathan reached a similar conclusion in *In re Domino's Pizza, Inc.*, No. 16-cv-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018).  There, the plaintiffs had been employed as pizza deliverymen for a Domino's Pizza franchise owned and operated by Robert Cookston.  They sued for wage and hour infractions, naming not only the franchise they worked for, but also a number of other Domino's Pizza franchises owned by Mr. Cookston.  *Id.* at *1.  Although noting that plaintiffs had pled that the restaurant defendants "share similar décor and websites, the same name, and a common owner," Judge Nathan dismissed plaintiffs' claims against the franchise entities that had never directly employed plaintiffs, reasoning plaintiffs had failed to plausibly plead "*any* connection" between themselves and those other franchise entities.  *Id.* at *3 (emphasis in original).

Judge Engelmayer and Judge Koeltl recently dismissed similar claims against members of restaurant groups.  In *Yeh v. Han Dynasty, Inc.*, Judge Engelmayer concluded that notwithstanding allegations of common ownership, a centralized website and reservation system, and a centralized chef training kitchen, the named plaintiff failed to plausibly state claims against the other restaurant entities within the tri-state Han Dynasty restaurant group at which the plaintiff never worked.  *Yeh v. Han Dynasty, Inc.*, No. 18-cv-6018, 2019 WL 633355, at *8 (S.D.N.Y. Feb, 14, 2019).  What was missing in plaintiff's allegations, Judge Engelmayer reasoned, was "a nexus suggesting control [by those other entities] of the plaintiff at hand."  *Id.*  And in *Solis v. ZEP LLC*, Judge Koeltl dismissed claims against a restaurant entity at which the plaintiffs never worked.  *Solis v. ZEP LLC*, No. 19-cv-4230, 2020 WL 1439744, at *9 (S.D.N.Y. Mar. 24, 2020).  Judge Koeltl reasoned that plaintiffs' allegations of common and unified operation of that restaurant with the

one at which plaintiffs actually worked were too "conclusory" to plausibly demonstrate shared control of plaintiffs as common employees. *Id.* at *8.

Most recently, Judge Liman dismissed FLSA collective and NYLL class claims asserted against the entity operating the Joe's Shanghai restaurant chain's Chinatown location. *Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580 (S.D.N.Y. 2020). The named plaintiffs had not worked at the Chinatown location, but alleged that all of the Joe's Shanghai restaurants were commonly owned and operated by the same person (who alleged had the power to hire and fire workers, control their schedules, and determine their rate and methods of payment), shared a common website, and would transfer employees between locations. *Id.* at 587-588. Despite these allegations, Judge Liman dismissed the claims against the Chinatown location after conducting an exhaustive analysis of the facts and available law. *Id.* at584-592. Judge Liman concluded that what was missing in plaintiffs' complaint "[wa]s an allegation of operational control, specifically an allegation that permits the inference that the alleged employer possessed the power to control the workers in question." *Id.* at 589 (internal quotation marks omitted). In other words, although plaintiffs offered a number of allegations concerning "common ownership and common purpose," those allegations did "not answer the fundamental question of whether each corporate entity controlled [p]laintiffs as employees." *Id.* at 588.

Analogous to these cases, Plaintiff here has not alleged any facts suggesting—let alone plausibly demonstrating—how each of the nine Non-Employer Defendants had any control over the terms and conditions of **his** employment at Buddakan. No allegations are offered suggesting one of the Non-Employer Defendants determined, influenced or set Buddakan's wage and hour policies back in 2014. The complaint does not allege that any of the Non-Employer Defendants hired or terminated Plaintiff. Plaintiff does not allege that any of the Non-Employer Defendants

controlled his work schedule at Buddakan, or was even aware of who he was, let alone what hours he worked or functions he performed.  At bottom, far more is required to support "a finding of 'extraordinary circumstances' so as to justify application of the" single integrated enterprise doctrine.  *Benzinger v. Lukoil Pan Ams.*, 447 F. Supp. 3d 99, 135 (S.D.N.Y. 2020) (collecting cases, and noting that allegations of centralized financial management, inter-company communications, and adoption by subsidiaries of a parent entity's policies are insufficient to show centralized control of a subsidiary's employees).  Critically missing from Plaintiff's complaint are allegations plausibly suggesting that the Non-Employer Defendants controlled his terms and conditions of employment.  After all, as this Court has noted, even where companies constitute a single integrated enterprise, those companies can "employ separate people and, *absent control*, are not liable for the separate employees."  *Lopez*, 2012 WL 6062501, at *4.

Plaintiff cannot make up for this omission by pointing to the use of a common website by the Non-Employer Defendants, SRO and Buddakan (*Id.* at ¶ 6).  As this Court has repeatedly concluded, the use of a shared website is not the sort of extraordinary circumstance that justifies imposition of integrated enterprise liability, as the use of a common website does "not answer the fundamental question of" how each Non-Employer Defendant "controlled Plaintiff[] as [an] employee[]."  *Huang*, 459 F.Supp.3d at 587 (use of a common website by companies "does not make each responsible for the labor law violations of the other"); *see also Lopez*, 2012 WL 6062501, at *4 (same); *Kwan v. Sahara Dreams Co. II*, No. 17-cv-4058, 2018 WL 6655607, at *3 (S.D.N.Y. Dec. 19, 2018) (use of a common website by members of the same luxury hotel chain "do[es] not support the inference that the Corporate Defendants shared centralized control of labor relations or interrelation of operations, much less that they had any control—as a matter of economic reality—over Plaintiff"); *Apolinar*, 2016 WL 2903278, at *4.  Nor can Plaintiff avoid

12

his failure to assert allegations of control by claiming that "[e]mployees are interchanged among and transferred between" Buddakan and the Non-Employer Defendants (Doc. 1-1 at ¶ 24).  As this Court recently explained, such a conclusory allegation will only carry "some weight" when "supported by factual content," particularly in situations like this, where the Plaintiff does not claim that he *personally* was transferred between restaurants.  *Huang*, 459 F. Supp. 3d at 589-590.

Accordingly, Plaintiff's allegations fail to plausibly demonstrate that the Non-Employer Defendants had any control over the terms and conditions of his employment at Buddakan. Accordingly, Plaintiff's claims against the Non-Employer Defendants should be dismissed.

## V.   PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD ALSO BE DISMISSED

For similar reasons, Plaintiff's claims against each of the Individual Defendants should be dismissed.  Plaintiff offers boilerplate claims that each of the four Individual Defendants are "principals" of the other defendants, with "operational control" of them, including the "power and authority to . . . (i) hire and fire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (v) maintain employment records, . . . (v) otherwise affect the quality, terms and conditions of their employment," and (vi) also "supervise and control supervisors of Plaintiff" (Doc. 1-1 at ¶¶ 19-22).  Plaintiff also speculates that he "could complain" to any of the Individual Defendants regarding the terms of his employment (*Id.*).  Beyond this, Plaintiff offers no further elaboration with respect to the Individual Defendants (*Id. passim*).

This Court has repeatedly concluded that such allegations—which merely recite "the prongs of the economic reality test" and are unaccompanied by "any specific factual allegations of control"—are "insufficient to plausibly allege that the Individual Defendants were Plaintiff's employers."  *Kwan*, 2018 WL 6655607, at *4; *see also Solis*, 2020 WL 1439744, at *8 (allegations that individual defendant held ownership interests in corporate defendants, and determined the

13

wages, set the schedules, maintained the employment records, and had the authority to hire and fire those corporate defendants' employees held to be too conclusory to withstand the individual defendant's motion to dismiss); *Yeh*, 2019 WL 633355, at *7 ("A complaint's bare recitation of the legal standard, unsupported by concrete factual allegations, is inadequate to plead that a given individual was an 'employer' of a plaintiff"); *Apolinar*, 2016 WL 2903278, at *5 ("[P]laintiff's conclusory allegations—which merely plead the presence of the factors relevant to whether an individual is a joint employer—are insufficient to plausibly show that [an individual defendant] was their employer:" missing were "any non-conclusory allegations suggesting [the individual defendant] . . . had any direct relationship of control over plaintiffs' terms and conditions of employment"); *Bravo v. Established Burger One*, No. 12-cv-9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 9, 2013) (dismissing claims against defendants because plaintiffs "allege[d] no specific facts, aside from the elements of the economic realities test," against them); *Cannon v. Douglas Elliman, LLC*, No. 06-cv-7092, 2007 WL 4358456, at *5 (S.D.N.Y. Dec. 10, 2007) (dismissing claims where, "beyond reciting the elements of a joint employer arrangement, plaintiffs have not shown that [defendant] did, in fact, play a role in supervising plaintiffs' work). *But compare Lopez*, 2012 WL 6062501, at *6 (refusing to dismiss individual defendants where plaintiff included specific, non-conclusory allegations of how those defendants personally hired some employees, personally directed the tasks of other employees, and instructed employees to direct any overtime requests to them personally).

Accordingly, because Plaintiff's complaint is devoid of specific and non-conclusory allegations explaining how the Individual Defendants exercised control over him, his claims against the Individual Defendants are due to be dismissed.

14

## VI.    CONCLUSION

Plaintiff's complaint fails to plausibly allege that the Non-Employer Defendants and Individual Defendants were his joint employer, or were part of some nebulous "single integrated enterprise" responsible for his 2014 wage claims against Buddakan.  Taken together, nothing in the Complaint raises more than the "sheer possibility that [the Non-Employer Defendants and Individual Defendants may] ha[ve] acted unlawfully," which is not enough to survive their motion to dismiss.  *Iqbal*, 556 U.S. at 678.

Date:   December 4, 2020
        New York, New York

/s/ *Eli Z. Freedberg*
Eli Z. Freedberg
William H. Ng
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022-3298
(212) 583-9600

Shabri Baliga
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH  43215
(614) 463-4201

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing *Memorandum Of Law In Support Of The Individual Defendants' And Non-Employer Defendants' Motion To Dismiss* has been filed via the electronic filing system on December 4, 2020.  Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

<u>*/s/ Eli Z. Freedberg*                    </u>
An Attorney for Defendants

4813-6575-8159.5 058537.1063

16