UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY WEISS, *on behalf of himself and the Class*,<br><br>   Plaintiff,<br><br>   vs.<br><br>STARR RESTAURANT ORGANIZATION, LP d/b/a STARR RESTAURANTS, BUDDAKAN NY, L.P. d/b/a BUDDAKAN, HAVATEQUILA RESTAURANT PARTNERS, LLC d/b/a EL VEZ, ERY NORTH TOWER RHC TENANT LLC d/b/a ELECTRIC LEMON, DR. HOWARD DR. FINE, LLC a.k.a. HOWARD FINE LLC d/b/a LA MERCERIE, MOE LARRY CHEESE, LLC d/b/a LE COUCOU, MORIMOTO NY VENTURE, L.P. d/b/a MORIMOTO, TRAIN DESIGN, LLC d/b/a PASTIS, SUR ORGANIZATION, LLC d/b/a THE CLOCKTOWER, 26TH STREET RESTAURANT, LLC d/b/a UPLAND, SRHG WEST, LLC d/b/a VERONIKA, STEPHEN STARR, ALLAN DOMB, DAVID ROBKIN, and JENNIFER ROBKIN,<br><br>   Defendants. | Case No.: 1:20-cv-08090-JMF |

**MEMORANDUM OF LAW IN SUPPORT OF THE NON-EMPLOYER DEFENDANTS' AND DEFENDANT STEPHEN STARR'S MOTION TO DISMISS**

Eli Z. Freedberg
William H. Ng
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022-3298
(212) 583-9600

Shabri Baliga
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH  43215
(614) 463-4201

## TABLE OF CONTENTS

PAGE

I.      PRELIMINARY STATEMENT ........................................................ 1

II.     STATEMENT OF RELEVANT FACTS ......................................... 2

III.    STANDARD OF REVIEW ............................................................ 4

IV.     PLAINTIFF'S CLAIMS AGAINST THE NON-EMPLOYER DEFENDANTS
        SHOULD BE DISMISSED ............................................................ 6

        A.    The Complaint Fails to Plausibly Plead That The Non-Employer
              Defendants Are Plaintiff's Employer.................................... 6

        B.    The Complaint Also Fails to Plausibly Plead That The Non-Employer
              Defendants Are Part Of A "Single Integrated Enterprise" With Buddakan .......... 7

V.      PLAINTIFF'S CLAIMS AGAINST STEPHEN STARR SHOULD ALSO BE
        DISMISSED ................................................................................. 16

VI.     CONCLUSION.............................................................................. 17

# **TABLE OF AUTHORITIES**

**Page(s)**

Cᴀꜱᴇꜱ

*Anderson v. Abbott*,
321 U.S. 349 (1944)..............................................................................................8

*Apolinar v. R.J. Restaurant, LLC*,
No. 15-cv-8655, 2016 WL 2903278 (S.D.N.Y. May 18, 2016) ............................9, 10, 14, 17

*Arculeo v. On-Site Sales & Mktg.*,
425 F.3d 193 (2d Cir. 2005)...................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................4, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................5

*Benzinger v. Lukoil Pan Ams.*,
447 F. Supp. 3d 99 (S.D.N.Y. 2020)..............................................................12, 15, 16

*Bonito v. Avalon Partners*,
967 N.Y.S.2d 19 (1st Dep't 2013) .........................................................................6

*Bravo v. Established Burger One*,
No. 12-cv-9044, 2013 WL 5549495 (S.D.N.Y. Oct. 9, 2013)................................17

*Brown v. Netflix*,
462 F. Supp. 3d 453 (S.D.N.Y. 2020).....................................................................5

*Bynog v. Cipriani Grp.*,
770 N.Y.S.2d 692 (N.Y. 2003) ..............................................................................6

*Cannon v. Douglas Elliman, LLC*,
No. 06-cv-7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)............................17

*In re Domino's Pizza, Inc.*,
No. 16-cv-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018)............................10

*Du v. Dingxiang, Inc.*,
No. 19-cv-11924, 2020 WL 7404984 (S.D.N.Y. Dec. 17, 2020) ..........................12

*Ebomwonyi v. Sea Shipping Line*,
— F. Supp. 3d —, 2020 WL 4194727 (S.D.N.Y. July 21, 2020).........................4, 5

*Hart v. Rick's Cabaret Int'l*,
  967 F. Supp. 2d 901 (S.D.N.Y. 2013) ...................................................................6

*Huang v. Shanghai City Corp.*,
  459 F. Supp. 3d 580 (S.D.N.Y. 2020) .................................................11, 12, 13, 14

*In re ICE LIBOR Antitrust Litig.*,
  No. 19-cv-439, 2020 WL 1467354 (S.D.N.Y. Mar. 26, 2020) .................................5

*Ivanov v. Builderdome, Inc.*,
  No. 19-cv-3422, 2020 WL 5768691 (S.D.N.Y. Sept. 28, 2020) .............................6

*Keita v. U.S. Small Bus. Admin.*,
  No. 07-cv-4958, 2010 WL 395980 (E.D.N.Y. Feb. 3, 2010) ..................................5

*Kwan v. Sahara Dreams Co. II*,
  No. 17-cv-4058, 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018) ......................13, 16

*Lopez v. Acme Am. Envt'l Co.*,
  No. 12-cv-511, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ...........8, 9, 13, 14, 17

*Meirmaris v. Braich*,
  No. 06-cv-7790, 2011 WL 13128211 (S.D.N.Y. Aug. 1, 2011) ..............................6

*Meng v. Ipanema Shoe Corp.*,
  73 F. Supp. 2d 392 (S.D.N.Y. 1999) ...................................................................15

*Murphy v. Lahaunie*,
  No. 13-cv-6503, 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016) .............................6

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996) .................................................................................8

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014) .............................................................................5, 14

*Parker v. Columbia Pictures Inds.*,
  204 F.3d 326 (2d Cir. 2000) .............................................................................7, 9

*Santana v. Fishlegs*,
  No. 13-1628, 2013 WL 5951438 (S.D.N.Y. Nov. 7, 2013) ................................9, 14

*Skanska USA Bldg. v. Atlantic Yards B2 Owner*,
  40 N.Y.S.3d 46 (1st Dep't. 2016), *aff'd.*, 31 N.Y.3d 1002 (N.Y. 2018), *reh'g
  denied*, 31 N.Y.3d 1141 (N.Y. 2018) ...................................................................8

*Solis v. ZEP LLC*,
  No. 19-cv-4230, 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) .....................11, 16

*Velez v. Novartis Pharm. Corp.*,
    244 F.R.D. 243 (S.D.N.Y. 2007) ........................................................................15

*Yeh v. Han Dynasty, Inc.*,
    No. 18-cv-6018, 2019 WL 633355 (S.D.N.Y. Feb, 14, 2019) .............................10, 11, 13, 16

**STATUTES**

Fair Labor Standards Act ............................................................................6, 9, 10, 11, 12

N.Y. LAB. LAW § 2(7) ........................................................................................6

N.Y. LAB. LAW § 663(1) ....................................................................................6

New York Labor Law ....................................................................1, 2, 6, 7, 9, 10, 11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................5

Spectrum News Staff, "Morimoto Restaurant in Chelsea Closing in May"
    https://www.ny1.com/nyc/all-boroughs/news/2020/02/12/morimoto-closing-
    chelsea-market-restaurant-location, Feb 12, 2020. ..........................................1-2

## MEMORANDUM OF LAW

Defendants Havatequila Restaurant Partners, LLC; Ery North Tower RHC Tenant LLC; Dr. Howard Dr. Fine, LLC; Moe Larry Cheese, LLC; Morimoto NY Venture, L.P.; Train Design, LLC; Sur Organization, LLC; 26th Street Restaurant, LLC; and SRHG West, LLC (the "Non-Employer Defendants"), together with Defendant Stephen Starr, respectfully submit this memorandum of law in support of their motion to dismiss the claims made against them in Plaintiff's First Amended Class Action Complaint (the "FAC," Doc. 21).[1]

## I.    PRELIMINARY STATEMENT

Non-moving defendant Buddakan NY, L.P. ("Buddakan") is a restaurant located in New York City. Plaintiff alleges he worked as a server at Buddakan from February 2014 to October 2014 (Doc. 21 at ¶ 47). Now some six years later, and based on his stale "direct observations and conversations with his [then] coworkers," Plaintiff brings suit under the New York Labor Law ("NYLL") to complain about Buddakan's wage and hour practices (*Id.* at ¶¶ 54, 63-71).

Plaintiff, however, does not merely name Buddakan as the defendant. Buddakan is affiliated with the Starr Restaurant group, including co-defendants Starr Restaurant Organization, L.P. ("SRO") and restaurateur Stephen Starr. SRO, in turn, is affiliated with a number of other restaurants in New York, including the restaurants owned and operated by the Non-Moving Defendants. Plaintiff names their restaurants as defendants in this case, claiming they are all somehow collectively run along with Buddakan "as a single integrated enterprise" by SRO (Doc.

---

[1]    Plaintiff's initial complaint also named Allan Domb and David and Jennifer Robkin as individual defendants (Doc. 1-1 at ¶¶ 20-22). However, the FAC asserts no claims against them, and no longer names them as defendants (*see* Doc. 21 *passim*). As a result, Allan Domb, David Robkin and Jennifer Robkin should be dismissed as defendant parties to this case.

21 at ¶ 17).[2]   However, Plaintiff—who was never employed by or worked at any of the Non-Employer Defendants' restaurants—offers nothing more than boilerplate and conclusory allegations regarding Stephen Starr's and the Non-Employer Defendants' alleged involvement in Buddakan's wage and hour practices.

Plaintiff's FAC fails to cure the defects inherent in his original complaint (*see* Doc. 20). Like its predecessor, the FAC does not plead facts sufficient to render plausible the notion that Mr. Starr and the Non-Employer Defendants exercised any formal or functional control over him. Plaintiff's complaint also fails to plead facts plausibly suggesting that Mr. Starr and the Non-Employer Defendants are part of some "single integrated enterprise" responsible for his years' old claims of being subjected to tip-credit, time-shaving, and spread-of-hour violations while working at Buddakan during 2014.  Plaintiff's claims against Mr. Starr and the Non-Employer Defendants should therefore be dismissed for his failure to plausibly plead claims against them. [3]

## II.   STATEMENT OF RELEVANT FACTS

Plaintiff Gregory Weiss brings this putative NYLL class action against Mr. Starr and the Non-Employer Defendants, as well as SRO and his former employer, Buddakan, for various NYLL wage and hour violations (Doc. 21 *passim*).  For a brief period during 2014, Plaintiff was employed as a server at Buddakan (*Id.* at ¶ 47).  Despite the fact that Plaintiff does not claim to have worked at any of the Non-Employer Defendants' restaurants, and does not claim to have ever had any direct interaction with Mr. Starr (*id. passim*), Plaintiff claims in a conclusory fashion that they, along with Buddakan and SRO, were all collectively his "employer," entitling him to bring

---

[2]       Defendant Morimoto NY Venture, L.P. was scheduled to close in May 2020, but was forced to early and permanently close in March 2020, as a result of the Covid-19 pandemic. *See, e.g.*, Spectrum News Staff, "Morimoto Restaurant in Chelsea Closing in May" https://www.ny1.com/nyc/all-boroughs/news/2020/02/12/morimoto-closing-chelsea-market-restaurant-location, Feb 12, 2020.

[3]       To be clear, this motion to dismiss is brought on behalf of the Non-Employer Defendants and Stephen Starr, and not on behalf of Buddakan or defendant Starr Restaurant Organization, L.P.

suit not only on behalf of Buddakan's non-exempt employees, but also on behalf of the employees of the Non-Employer Defendants (*Id.* at ¶ 37).

Specifically, Plaintiff attempts to justify naming so many defendants by once again claiming they are all operated as part of "a single integrated enterprise" along with SRO and Buddakan, because they are:

> engaged in the same activities, share common ownership, and have a common business purpose. Defendants maintain a centralized organizational structure, control, and human resources [sic] and implement consistent wage and hour policies, procedures, and employment practices across all of their Restaurants. Employees are interchanged among and transferred between Defendants' restaurants, as well as supplies.

(Doc. 21 at ¶ 17; *compare, e.g.*, Doc. 1-1 at ¶ 24). This time, however, Plaintiff seeks to "bolster" these allegations with additional claims and extraneous exhibits suggesting the Non-Employer Defendants' shared ownership with SRO and Buddakan (Doc. 21 at ¶ 19); the Non-Employer Defendants' use of a shared website with SRO and Buddakan (*id.* at ¶ 20); and the use of common employment advertisements, including the alleged involvement of SRO at *some* level in the hiring process (*id.* at ¶¶ 21-23). Plaintiff even claims that a "single integrated enterprise" is established by the fact that SRO was seeking to hire a Vice President of Human Resources in the fall of 2019 (*Id.* at ¶¶ 24-26). Even if true, these allegations of course say nothing about the Non-Employer Defendants' ability to exert control over the terms and conditions of Plaintiff's employment at Buddakan.

The allegations against Mr. Starr are equally conclusory. Plaintiff again alleges that:

> Defendant STEPHEN STARR had and exercised control over the employment terms and conditions of Plaintiff and Class members. With respect to Plaintiff and Class members, Defendant STEPHEN STARR had and exercised the power and authority to (and could also delegate to managers and supervisors the power to) (i) hire and hire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records,

3

> and (v) otherwise affect the quality, terms, and conditions of their employment. At all times employees could complaint to Defendant STEPHEN STARR directly regarding any of the terms of their employment, and Defendant STEPHEN STARR would have the authority to effect any changes to the quality and terms of their employment. Defendant STEPHEN STARR exercised functional control over the business and financial operations of Corporate Defendants and had authority over all employee-related decisions including payroll, personnel, and wage and hour policies concerning Plaintiff and Class members. Defendant STEPHEN STARR ensured the business was operating efficiently and profitably. Defendant STEPHEN STARR possesses the power and authority to supervise and control supervisors of Plaintiff and Class members and can reprimand employees.

(Doc. 21 at ¶ 27; *compare, e.g.*, Doc. 1-1 at ¶ 19). In his FAC, Plaintiff now adds references to a YouTube video and two magazine articles noting Mr. Starr's attention to detail; belief in the idea that employees of any restaurant "should learn all jobs" at their location; and reliance on "an infrastructure . . . to keep" Buddakan and the Non-Employer Defendant's restaurants "running smoothly and allow [him] to step away from the day-to-day mechanics" (Doc. 21 at ¶¶ 28-30). But Plaintiff adds no support for the notion that Mr. Starr was involved in the complained-of wage practices at Buddakan some six years ago.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]," bare assertions and unsupported conclusions will not suffice. *Id.* at 678, 681. To avoid dismissal, a plaintiff must support his claims with sufficient factual allegations "to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Ebomwonyi v. Sea Shipping Line*, — F. Supp. 3d —, 2020 WL 4194727, at *3 (S.D.N.Y. July 21, 2020) (quoting *Iqbal*, 556 U.S. at 678).

"The question on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Brown v. Netflix*, 462 F. Supp. 3d 453, 458-459 (S.D.N.Y. 2020) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "The purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Id.* (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).  The party opposing dismissal "must do more than simply show that there is some metaphysical doubt as to the material facts." *Ebomwonyi*, 2020 WL 4194727, at *4 (quotation omitted).  Accordingly, when ruling on a motion to dismiss, the court accepts all of a complaint's well-pleaded factual allegations as true and draws all reasonable inferences from them in the plaintiff's favor, while giving no "credit [to] conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  A court must also avoid being swayed by a plaintiff's unsubstantiated speculation—after all, a "complaint rooted entirely in conjecture and speculation is worthless." *Keita v. U.S. Small Bus. Admin.*, No. 07-cv-4958, 2010 WL 395980, at *2 (E.D.N.Y. Feb. 3, 2010); *accord Twombly*, 550 U.S. at 555 (a complaint's factual allegations must "be enough to raise a right to relief above the speculative level"); *In re ICE LIBOR Antitrust Litig.*, No. 19-cv-439, 2020 WL 1467354, at *4 (S.D.N.Y. Mar. 26, 2020) (a complaint cannot survive a Rule 12 motion when "based wholly in speculation and wishful thinking as to what Defendants *might* have done") (emphasis in original).

## IV.   PLAINTIFF'S CLAIMS AGAINST THE NON-EMPLOYER DEFENDANTS SHOULD BE DISMISSED

### A.   The Complaint Fails to Plausibly Plead That The Non-Employer Defendants Are Plaintiff's Employer

All of Plaintiff's claims arise under the NYLL (Doc. 21 *passim*).  To successfully state a NYLL claim, a plaintiff must demonstrate, *inter alia*, "that he or she is an employee entitled to its protections."  *Meirmaris v. Braich*, No. 06-cv-7790, 2011 WL 13128211, at *5 (S.D.N.Y. Aug. 1, 2011) (quoting *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr.*, 687 N.Y.S.2d 667, 669 (2d Dep't 1999); *see also* N.Y. LAB. LAW § 663(1) (authorizing civil actions by "employee[s]" against "employers" who violated the NYLL's wage provisions).  A company "employs" an individual if it "permit[s] or suffer[s]" that individual to work.  N.Y. LAB. LAW § 2(7).  While Plaintiff's burden is "substantially similar" to that he would face under the Fair Labor Standards Act ("FLSA"), the NYLL inquiry "focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation."  *Hart v. Rick's Cabaret Int'l*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quotation omitted).

Under the NYLL then, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Bynog v. Cipriani Grp.*, 770 N.Y.S.2d 692, 695 (N.Y. 2003) (collecting cases); *see also Ivanov v. Builderdome, Inc.*, No. 19-cv-3422, 2020 WL 5768691, at *4 (S.D.N.Y. Sept. 28, 2020) (same).  Courts have identified a variety of factors to aid in resolving this inquiry, including whether the purported employer "hired and fired employees, supervised and controlled employees' work schedules, determined the method and rate of pay, kept employment records, and approved any vacations."  *Bonito v. Avalon Partners*, 967 N.Y.S.2d 19, 20 (1st Dep't 2013); *accord Murphy v. Lahaunie*, No. 13-cv-6503, 2016 WL

1192689, at *6 (S.D.N.Y. Mar. 22, 2016) (discussing factors for determining employment under NYLL).

Here, however, Plaintiff offers no allegations suggesting—let alone plausibly demonstrating—that each of the Non-Employer Defendants was his employer. Plaintiff instead acknowledges that he worked only for Buddakan, and even then only for a brief period during 2014 (Doc. 21 at ¶ 47). He does not allege that he ever worked for any of the Non-Employer Defendants (*Id. passim*). Plaintiff does not allege that the Non-Employer Defendants controlled his work schedule at Buddakan, or determined his method and rate of pay at Buddakan (*Id. passim*). Nor does Plaintiff allege that any of the Non-Employer Defendants maintained his employment records, or approved his vacation requests (*Id. passim*). At bottom, Plaintiff fails to allege anywhere in his complaint that the Non-Employer Defendants exerted any control over the terms and conditions of his employment. Plaintiff, therefore, has failed to plausibly allege that any—let alone all—of the Non-Employer Defendants were his employer.

## B.   The Complaint Also Fails to Plausibly Plead That The Non-Employer Defendants Are Part Of A "Single Integrated Enterprise" With Buddakan

Plaintiff claims all nine (9) of the Non-Employer Defendants should be held liable along with SRO and Buddakan as his employer under a "single integrated enterprise" theory (Doc. 21 at ¶ 17). Under that doctrine, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a large 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Arculeo v. On-Site Sales & Mktg.*, 425 F.3d 193, 198 (2d Cir. 2005). A plaintiff can invoke this doctrine by proving "participation by the defendant that is sufficient and necessary to the total employment process of the employer." *Parker v. Columbia Pictures Inds.*, 204 F.3d 326, 341 (2d Cir. 2000) (internal quotation marks and

brackets omitted).  Because the doctrine "is an exception to the doctrine of limited [corporate] liability," and essentially a form of corporate veil-piercing, the Second Circuit has recognized that the doctrine is a remedy that under New York law should be applied only "under extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404-05 (2d Cir. 1996); *accord Anderson v. Abbott*, 321 U.S. 349, 361-62 (1944) ("Normally the corporation is an insulator from liability on claims of creditors…. Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted."); *Skanska USA Bldg. v. Atlantic Yards B2 Owner*, 40 N.Y.S.3d 46, 53-54 (1st Dep't. 2016) ("Veil-piercing is a narrowly construed doctrine" imposing a "heavy burden" on a plaintiff to "show[] that: (1) the owners exercised complete domination of the corporation" and "such domination was used to commit a fraud or wrong against the plaintiff"), *aff'd.*, 31 N.Y.3d 1002 (N.Y. 2018), *reh'g denied*, 31 N.Y.3d 1141 (N.Y. 2018).

Determining whether multiple entities should be regarded as a single integrated enterprise requires consideration of four factors: whether the entities have "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Murray*, 74 F.3d at 404.  But these factors are not assessed in general terms.  Instead, each factor should be evaluated for evidence of common, shared control of a plaintiff's employment, as even "companies that are part of an 'integrated enterprise' . . . may nevertheless employ separate people and, *absent control*, are not liable for the separate employees." *Lopez v. Acme Am. Env't l Co.*, No. 12-cv-511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012).  Accordingly, "[a]llegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled [p]laintiffs as employees." *Id.* (collecting cases); *see also Murray*, 74 F.3d at 405 (integrated enterprise liability should be applied only where a plaintiff

demonstrates other entities "share[d] decisionmaking authority with" his employer with respect to his employment); *Parker*, 204 F.3d at 341 (a plaintiff must demonstrate "participation by the defendant" in his or her "total employment process").

This Court has repeatedly dismissed claims seeking to apply the single integrated enterprise doctrine to brother-sister restaurants within restaurant chains and groups, most often because the plaintiffs—while offering allegations of common ownership, joint marketing, use of common websites and centralized payroll—failed to offer specific, plausible allegations explaining how the sister restaurants "exercised. . . . ***control*** over the [p]laintiffs." *Lopez*, 2012 WL 6062501, at *5 (emphasis added).

In *Santana v. Fishlegs, LLC*, for example, the plaintiffs asserted wage and hour claims against seven corporate entities, each of whom operated a restaurant owned by restauranteur David Burke. *Santana v. Fishlegs*, No. 13-1628, 2013 WL 5951438, at *1 (S.D.N.Y. Nov. 7, 2013). The named plaintiffs had worked at only two of those restaurants; nevertheless, they sought to assert collective and class allegations under the FLSA and NYLL on behalf of employees at all of the restaurants, under a single integrated enterprise theory. *Id.* Despite allegations that all of the restaurants "engage[d] in joint advertising and marketing, share[d] human resources and legal personnel, jointly solicit[ed] job applicants, and pa[id] their employees with the same payroll methods" (*id.*), Judge Schofield dismissed the restaurant entities that never employed the named plaintiffs, concluding that the named plaintiffs had failed to plausibly allege common employment practices across all of the named defendants. *Id.* at **5, 8.

Similarly, in *Apolinar v. R.J. Restaurant, LLC*, the named plaintiffs worked for an entity who operated one location of the "Toasties" restaurant group. *Apolinar v. R.J. Restaurant, LLC*, No. 15-cv-8655, 2016 WL 2903278, at *1 (S.D.N.Y. May 18, 2016). Despite having worked at

only one Toasties restaurant, the plaintiffs filed an FLSA collective and NYLL class action wage and hour suit against all of the entities who operated Toasties locations in New York City, claiming they were part of a single integrated enterprise.  *Id.* at *1.  Despite alleging that the entities "share[d] common management, centralized control of labor relations, common ownership" and used a "common website" (*id.*), Judge Forrest dismissed the entities that owned and operated Toasties locations that never employed the named plaintiffs.  *Id.* at *4-5.  Judge Forrest concluded that not only where the named plaintiffs' allegations concerning those entities "conclusory" (*id.* at *4), but "[t]heir allegations entirely leave out the relationship that plaintiffs, as employees, had to the Toasties locations besides the one location at which plaintiffs actually worked."  *Id.* at *4.  Critically missing, Judge Forrest reasoned, were allegations plausibly explaining how the entities that never employed the named plaintiffs "had any sort of direct employer responsibility over them, such as the ability to hire or fire, or to set work hours or job responsibilities."  *Id.*

Judge Nathan reached a similar conclusion in *In re Domino's Pizza, Inc.*, No. 16-cv-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018).  There, the plaintiffs had been employed as pizza deliverymen for a Domino's Pizza franchise owned and operated by Robert Cookston.  They sued for wage and hour infractions, naming not only the franchise they worked for, but also a number of other Domino's Pizza franchises owned by Mr. Cookston.  *Id.* at *1.  Although noting that plaintiffs had pled that the restaurant defendants "share similar décor and websites, the same name, and a common owner," Judge Nathan dismissed plaintiffs' claims against the franchise entities that had never directly employed plaintiffs, reasoning plaintiffs had failed to plausibly plead "*any* connection" between themselves and those other franchise entities.  *Id.* at *3 (emphasis in original).

Judge Engelmayer and Judge Koeltl have also dismissed similar claims against members of restaurant groups.  In *Yeh v. Han Dynasty, Inc.*, Judge Engelmayer concluded that

notwithstanding allegations of common ownership, a centralized website and reservation system, and a centralized chef training kitchen, the named plaintiff failed to plausibly state claims against the other restaurant entities within the tri-state Han Dynasty restaurant group at which the plaintiff never worked. *Yeh v. Han Dynasty, Inc.*, No. 18-cv-6018, 2019 WL 633355, at *8 (S.D.N.Y. Feb, 14, 2019). What was missing in plaintiff's allegations, Judge Engelmayer reasoned, was "a nexus suggesting control [by those other entities] of the plaintiff at hand." *Id.* And in *Solis v. ZEP LLC*, Judge Koeltl dismissed claims against a restaurant entity at which the plaintiffs never worked. *Solis v. ZEP LLC*, No. 19-cv-4230, 2020 WL 1439744, at *9 (S.D.N.Y. Mar. 24, 2020). Judge Koeltl reasoned that plaintiffs' allegations of common and unified operation of that restaurant with the one at which plaintiffs actually worked were too "conclusory" to plausibly demonstrate shared control of plaintiffs as common employees. *Id.* at *8.

Most recently, Judge Liman dismissed FLSA collective and NYLL class claims asserted against the entity operating the Joe's Shanghai restaurant chain's Chinatown location. *Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580 (S.D.N.Y. 2020). The named plaintiffs had not worked at the Chinatown location, but alleged that all of the Joe's Shanghai restaurants were commonly owned and operated by the same person (who alleged had the power to hire and fire workers, control their schedules, and determine their rate and methods of payment), shared a common website, and would transfer employees between locations. *Id.* at 587-588. Despite these allegations, Judge Liman dismissed the claims against the Chinatown location after conducting an exhaustive analysis of the facts and available law. *Id.* at584-592. Judge Liman concluded that what was missing in plaintiffs' complaint "[wa]s an allegation of operational control, specifically an allegation that permits the inference that the alleged employer possessed the power to control the workers in question." *Id.* at 589 (internal quotation marks omitted). In other words, although

11

plaintiffs offered a number of allegations concerning "common ownership and common purpose," those allegations did "not answer the fundamental question of whether each corporate entity controlled [p]laintiffs as employees." *Id.* at 588. *Accord Du v. Dingxiang*, *Inc*., No. 19-cv-11924, 2020 WL 7404984, at *7-8 (S.D.N.Y. Dec. 17, 2020) (refusing to extend FLSA conditional certification to Birds of a Feather restaurant locations in New York where the plaintiff did not work: although the plaintiff offered evidence showing all the restaurants were commonly owned and "advertised as an enterprise," concluding plaintiff failed to offer evidence that her complained-of wage practices occurred at the other restaurant locations).

Analogous to these cases, Plaintiff here has not plausibly demonstrated how each—let alone all—of the nine Non-Employer Defendants had any control over the terms and conditions of ***his*** employment ***at Buddakan***.  No allegations are offered suggesting one of the Non-Employer Defendants determined, influenced or set Buddakan's wage and hour policies back in 2014.  The FAC does not allege that any of the Non-Employer Defendants hired or terminated Plaintiff. Plaintiff does not allege that any of the Non-Employer Defendants controlled his work schedule at Buddakan, or was even aware of who he was, let alone what hours he worked or functions he performed.  At bottom, far more is required to support "a finding of 'extraordinary circumstances' so as to justify application of the" single integrated enterprise doctrine. *Benzinger v. Lukoil Pan Ams*., 447 F. Supp. 3d 99, 135 (S.D.N.Y. 2020) (collecting cases, and noting that allegations of centralized financial management, inter-company communications, and adoption by subsidiaries of a parent entity's policies are insufficient to show centralized control of a subsidiary's employees).  Critically missing from Plaintiff's FAC are allegations plausibly suggesting that the Non-Employer Defendants controlled his terms and conditions of employment.  After all, as this Court has noted, even where companies constitute a single integrated enterprise, those companies

can "employ separate people and, *absent control*, are not liable for the separate employees." *Lopez*, 2012 WL 6062501, at *4.

The allegations and exhibits to Plaintiff's FAC cannot make up for this critical omission, which was equally present in his original complaint.   While Plaintiff alleges overlapping ownership of, and a shared purpose between, Buddakan and the Non-Employer Defendants (Doc. 21 at ¶¶ 18-20), this Court has repeatedly concluded that such allegations, "without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees." *Huang*, 459 F. Supp. 3d at 588 (quoting *Lopez,* 2012 WIL 6062501, at *4); *see also Yeh*, WL 633355, at *8 (dismissing non-employer restaurants because the plaintiff's complaint failed to plausibly demonstrate how they should be held accountable for his employment or pay, or how they had any control over him).

Similarly, Plaintiff's claims about use of a common website and shared Twitter and LinkedIn pages by the Non-Employer Defendants, SRO and Buddakan also fail to plausibly demonstrate the existence of some "single integrated enterprise" here (Doc. 21 at ¶ 20; Docs. 21-1 to 21-4).   As this Court has repeatedly noted, the use of a shared website is not the sort of extraordinary circumstance that justifies imposition of integrated enterprise liability, as the use of a common website does "not answer the fundamental question of" how each Non-Employer Defendant "controlled Plaintiff[] as [an] employee[]."  *Huang*, 459 F.Supp.3d at 587 (use of a common website by companies "does not make each responsible for the labor law violations of the other"); *see also Lopez*, 2012 WL 6062501, at *4 (same); *Kwan v. Sahara Dreams Co. II*, No. 17-cv-4058, 2018 WL 6655607, at *3 (S.D.N.Y. Dec. 19, 2018) (use of a common website by members of the same luxury hotel chain "do[es] not support the inference that the Corporate Defendants shared centralized control of labor relations or interrelation of operations, much less

13

that they had any control—as a matter of economic reality—over Plaintiff"); *Apolinar*, 2016 WL 2903278, at *4.

Plaintiff's allegation that "[e]mployees are interchanged among and transferred between" Buddakan and the Non-Employer Defendants is also unavailing (Doc. 21 at ¶ 17).  As this Court recently explained, such a conclusory allegation will only carry "some weight" when "supported by factual content," particularly in situations like this, where the Plaintiff does not claim that he ***personally*** was transferred between restaurants, or ever worked at any other restaurant besides Buddakan.  *Huang*, 459 F. Supp. 3d at 589-590; *accord Nielsen*, 746 F.3d at 62 (noting that courts should give no "credit [to] conclusory allegations" in a complaint when resolving a motion to dismiss).  But the FAC offers no such factual elaboration.

Plaintiff's reference to the use of common employment advertisements, including the alleged involvement of SRO at *some* level in the hiring process, also does not plausibly establish that any "single integrated enterprise" exists here (Doc. 21 at ¶¶ 21-22; *see also* Docs. 21-5 to 21-7).  That SRO may have been involved in the multi-step interview process of job applicants does not answer the question of who was ultimately responsible for hiring those applicants (*see, e.g.,* Doc. 21 at ¶¶ 21-22).  In any event, "jointly soliciting job applicants" is not indicative of a single integrated enterprise, *Santana*, 2013 WL 5951438, at *1, 8, nor are allegations of inter-corporate hiring authority unless a plaintiff can show that each of the brother-sister entities he seeks to impart liability upon were involved in those hiring decisions.  *See Apolinar*, 2016 WL 2903278, at *2; *Lopez*, 2012 WL 6062501, at *1, 5.  This, ultimately, is the problem with Plaintiff's claims here: he seeks to impart liability for Buddakan's wage and hour practices not only on SRO (who he claims participated in job applicant solicitation and hiring decisions), but also on the Non-

14

Employer Defendants (who he does not allege played a part in the hiring, firing or policy making decisions of SRO or Buddakan).

Plaintiff's references to third party comments about the Non-Employer Defendant's benefits packages also do not aid his cause, as a "common benefits package speaks only to economies of scale . . . and not to centralized control of labor relations." *Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 405 (S.D.N.Y. 1999) (quoting *Kellet v. Glaxo Enter., Inc*., No. 91-cv-6237, 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994)); *see also Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 252 (S.D.N.Y. 2007) ("the fact that the companies maintained the same benefits does not suggest centralized control of labor relations").

Finally, Plaintiff's citation to the fact that SRO was seeking to hire a Vice President of Human Resources in September 2019 also does not help him establish the plausibility of his single integrated enterprise claims (Doc. 21 at ¶¶ 24-25).  Plaintiff doesn't allege the position was ever filled, or claim that the position contemplated policy-making decisions for all of the Non-Employer Defendants.  Even if Plaintiff had asserted such allegations, "the fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that the parent exercised centralized control over the subsidiary's employees." *Benzinger*, 447 F. Supp. 3d at 135 (internal quotation marks and citation omitted).  Moreover, Plaintiff's claims concern his employment in 2014, and not on his speculation about what a new Vice President of Human Resources position may have done years later.

Accordingly, Plaintiff's allegations fail to plausibly demonstrate that the Non-Employer Defendants had any control over the terms and conditions of his employment at Buddakan.  What he added to his FAC are allegations that go to his claims against SRO—his new allegations and exhibits say nothing about how ***the Non-Employer Defendants*** had any control over him (or other

15

Buddakan employees).  Accordingly, Plaintiff's claims against the Non-Employer Defendants should be dismissed.

## V.   PLAINTIFF'S CLAIMS AGAINST STEPHEN STARR SHOULD ALSO BE DISMISSED

For similar reasons, Plaintiff's claims against Mr. Starr should also be dismissed.  Plaintiff claims Mr. Starr had "operational control" over Buddakan and the Non-Employer Defendants, including the "power and authority to . . . (i) hire and fire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (v) maintain employment records, . . . (v) otherwise affect the quality, terms and conditions of their employment," and (vi) also "supervise and control supervisors of Plaintiff" (Doc. 21 at ¶¶ 27).  Plaintiff also speculates that he "could complain" to Mr. Starr regarding the terms of his employment (*Id.*).  Beyond this, Plaintiff offers no further elaboration with respect to Mr. Starr, apart from citing two magazine articles and a YouTube video noting Mr. Starr's attention to detail; belief in the idea that employees of any restaurant "should learn all jobs" at their location; and reliance on "an infrastructure . . . to keep" Buddakan and the Non-Employer Defendant's restaurants "running smoothly and allow [him] to step away from the day-to-day mechanics" (Doc. 21 at ¶¶ 28-30).

This Court has repeatedly concluded that such allegations—which merely recite "the prongs of the economic reality test" and are unaccompanied by "any specific factual allegations of control"—are "insufficient to plausibly allege that the Individual Defendants were Plaintiff's employers."  *Kwan*, 2018 WL 6655607, at *4; *see also Solis*, 2020 WL 1439744, at *8 (allegations that individual defendant held ownership interests in corporate defendants, and determined the wages, set the schedules, maintained the employment records, and had the authority to hire and fire those corporate defendants' employees held to be too conclusory to withstand the individual defendant's motion to dismiss); *Yeh*, 2019 WL 633355, at *7 ("A complaint's bare recitation of

16

the legal standard, unsupported by concrete factual allegations, is inadequate to plead that a given individual was an 'employer' of a plaintiff"); *Apolinar*, 2016 WL 2903278, at *5 ("[P]laintiff's conclusory allegations—which merely plead the presence of the factors relevant to whether an individual is a joint employer—are insufficient to plausibly show that [an individual defendant] was their employer:" missing were "any non-conclusory allegations suggesting [the individual defendant] . . . had any direct relationship of control over plaintiffs' terms and conditions of employment"); *Bravo v. Established Burger One*, No. 12-cv-9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 9, 2013) (dismissing claims against defendants because plaintiffs "allege[d] no specific facts, aside from the elements of the economic realities test," against them); *Cannon v. Douglas Elliman, LLC*, No. 06-cv-7092, 2007 WL 4358456, at *5 (S.D.N.Y. Dec. 10, 2007) (dismissing claims where, "beyond reciting the elements of a joint employer arrangement, plaintiffs have not shown that [defendant] did, in fact, play a role in supervising plaintiffs' work). *But compare Lopez*, 2012 WL 6062501, at *6 (refusing to dismiss individual defendants where plaintiff included specific, non-conclusory allegations of how those defendants personally hired some employees, personally directed the tasks of other employees, and instructed employees to direct any overtime requests to them personally).

Because Plaintiff's FAC is devoid of specific and non-conclusory allegations explaining how Mr. Starr actually and personally exercised control over him, his claims against Mr. Starr should be dismissed.

## VI.   CONCLUSION

Like his original complaint, Plaintiff's FAC fails to plausibly allege that the Non-Employer Defendants and Mr. Starr were his joint employer, or were part of some nebulous "single integrated enterprise" responsible for his 2014 wage claims against Buddakan.  Taken together, nothing in the Complaint raises more than the "sheer possibility that [the Non-Employer Defendants and Mr.

17

Starr may] ha[ve] acted unlawfully," which is not enough to survive their motion to dismiss. *Iqbal*,

556 U.S. at 678.

Date:   January 12, 2021
        New York, New York

/s/ *Eli Z. Freedberg*

Eli Z. Freedberg
William H. Ng
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022-3298
(212) 583-9600

Shabri Baliga
LITTLER MENDELSON, P.C.
41 South High Street, Suite 3250
Columbus, OH  43215
(614) 463-4201

*Attorneys for Defendants*
