UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
GREGORY WEISS, :
:
:
Plaintiff, :
: 20-CV-8090 (JMF)
-v- :
: OPINION AND ORDER
STARR RESTAURANT ORGANIZATION, LP D/B/A :
STARR RESTAURANTS et al., :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiff Gregory Weiss brings this putative class action raising wage-and-hour claims under the New York Labor Law ("NYLL") against the restaurant Buddakan (formally known as Buddakan NY, L.P.), where Weiss previously worked as a server; Buddakan's parent company, Starr Restaurant Organization, L.P., more commonly known as Starr Restaurants ("Starr Restaurants"); the principal of Starr Restaurants, Stephen Starr; and a variety of other restaurants associated with Starr (the "Other Starr Restaurants").[1]  Buddakan and Starr Restaurants have answered Weiss's claims.  ECF No. 22.  The remaining Defendants — Starr and the Other Starr Restaurants (together, the "Moving Defendants") — now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Weiss's claims on the ground that they were not

---

[1]  The Other Starr Restaurants are Havatequila Restaurant Partners, LLC d/b/a El Vez; Ery North Tower RHC Tenant LLC d/b/a Electric Lemon; Dr. Howard Dr. Fine, LLC a.k.a. Howard Fine LLC d/b/a La Mercerie; Moe Larry Cheese, LLC d/b/a Le Coucou; Morimoto NY Venture, L.P. d/b/a Morimoto; Train Design, LLC d/b/a Pastis; Sur Organization, LLC d/b/a The Clocktower; 26th Street Restaurant, LLC d/b/a Upland; SRHG West, LLC d/b/a Veronika.

Weiss's "employers" within the meaning of the NYLL. For the reasons that follow, the motion is granted as to the Other Starr Restaurants and denied as to Starr himself.

## BACKGROUND

The following relevant facts, drawn from the operative amended complaint (the "Complaint"), *see* ECF No. 21 ("Compl."), and documents attached thereto or incorporated by reference therein, are taken as true and construed in the light most favorable to Weiss. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Weiss worked as a server at Buddakan, located in Manhattan, between February and October 2014. *Id.* ¶ 47. Throughout his employment, Weiss's schedule varied week to week, but he typically worked five shifts of approximately seven hours, for an average of thirty-five hours per week. *Id.* ¶ 48. He received the prevailing tip-credit minimum wage of $5.00 per hour, but for at least the first and last hours of his shift he was required to do non-tipped work, including polishing glass and silverware, moving furniture, cleaning, and helping with food preparations. *Id.* ¶¶ 49-50. Weiss was further "required to clock out and do side work such as cleaning and organizing" while "waiting for the manager to count and distribute the tips made," sometimes for up to an hour — time for which he was not compensated. *Id.* ¶ 51. Weiss also never received "spread of hours" pay for workdays exceeding ten hours. *Id.* ¶ 53.

Buddakan is "commonly owned by [Starr Restaurants] (which is in turn owned by . . . Stephen Starr)." *Id.* ¶ 19. Starr Restaurants also "commonly own[s]" and operates many other restaurants around the world, including the Other Starr Restaurants, all of which are located in New York City. *Id.* ¶ 5. Weiss alleges, "[b]ased on [his] direct observations and conversations with his coworkers," that "all non-exempt employees of Defendants worked similar hours and were paid similarly." *Id.* ¶ 54. Indeed, he avers that "[e]mployees are interchanged among and

transferred between Defendants' restaurants, as well as supplies"; that "Defendants maintain a centralized organizational structure, control, and human resources"; and that Defendants "implement consistent wage and hour policies, procedures, and employment practices across all of their [r]estaurants." *Id.* ¶ 17. He contends that this centralized structure is evidenced by, among other things, the fact that the contact information on each restaurant's website lists an email address ending in "@starr-retaurants.com" and that each website links to shared Twitter and LinkedIn pages, *id.* ¶ 20; *see also* ECF Nos. 21-2, 21-3; that Starr Restaurants sells gift cards that may be used at any of the restaurants, Compl. ¶ 20; *see also* ECF No. 21-4; that job advertisements for line cooks and hosts posted online "identif[y] Starr Restaurants, *not* any of the individual [r]estaurant locations, as the employer" and "do not even disclose at which [r]estaurant the applicant would be working," Compl. ¶ 21; *see also* ECF No. 21-5; that a server at a restaurant affiliated with Starr Restaurants recounted on the website glassdoor.com that his hiring process had involved an interview at "Starr headquarters," Compl. ¶ 22; *see also* ECF No. 21-6; that employee benefit reviews listed on glassdoor.com "describe employee benefits across all the Starr Restaurants Group locations, not at individual restaurants," Compl. ¶ 23; *see also* ECF No. 21-7; and that a 2019 job advertisement sought a Vice President of Human Resources at "STARR Restaurants" who would be "responsible for providing leadership in developing human resources strategy and participation in tactical execution in support of the overall business plan of the organization, specifically in the areas of compliance, employee relations, payroll, talent acquisition and retention, performance management, succession planning, organizational development, benefits and compensation," ECF No. 21-8, at 2; Compl. ¶¶ 24-26.

      Stephen Starr "is the owner, founder, and CEO of" Defendants, including Starr Restaurants, and, according to Weiss, "has operational control of the Restaurants." Compl. ¶ 27.

The Complaint alleges that Starr "had and exercised control over the employment terms and conditions of" Weiss and those similarly situated to him, including "the power and authority to (and could also delegate to managers and supervisors the power to) (i) hire and fire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment." *Id.*  It further alleges that, "[a]t all times, employees could complain to [Starr] directly regarding any of the terms of their employment, and [Starr] would have the authority to effect any changes to the quality and terms of their employment"; that Starr "ensured the business was operating efficiently and profitably"; and that he "possesses the power and authority to supervise and control supervisors . . . and can reprimand employees." *Id.*  Weiss contends that Starr's control is evidenced by public statements he has made in interviews and online videos, including a statement that "If I go out and notice one mistake, the dish is off or executed poorly, one paint chip, one piece of trash on the floor . . . that's it.  The dish is off the menu, the staff training is revamped, the paint is fixed.  There will be action," *id.* ¶ 28; ECF No. 21-9, another that his "mantra is to be concerned with every little detail," Compl. ¶ 30; and an observation in a trade publication that Starr "is known for sweating the small stuff" and is "still interviewing potential servers for a property," despite his senior leadership role, *id.* ¶ 29.

    Weiss commenced suit in New York Supreme Court, New York County, on August 28, 2020.  ECF No. 1-1.[2]  The following month, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d) and 1453.  ECF No. 1.  The Moving Defendants now move to dismiss.

---

[2]    The initial complaint also named as Defendants Allan Domb, David Robkin, and Jennifer Robkin, ECF No. 1-1 ¶¶ 20-22, but they are not named in the operative Complaint, *see* ECF No. 25 (terminating Domb, Robkin, and Robkin as defendants).

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Weiss's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

To be held liable under the NYLL, "an entity or an individual must be an 'employer'" within the meaning of the statute. *Barrett v. Michael Stapleton Assocs., Ltd.* (*In re Michael Stapleton Assocs. Ltd.*), No. 17-CV-5468 (AJN), 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Buddakan and Starr Restaurants do not dispute that they were Weiss's "employers" for purposes of the NYLL. The question presented by this motion is whether the Moving Defendants were as well. Weiss contends that Starr is liable as an "employer" based on an "operational control" theory, *see* ECF No. 26 ("PL.'s Opp'n"), at 10-13, and that the Other Starr Restaurants are liable as "employers"

5

based on a "single integrated enterprise" theory, *see id.* at 4-10.  The Court will begin with a description of the applicable legal principles and then address each of these contentions in turn.

### A.  The Meaning of "Employer" Under the NYLL

"The NYLL defines 'employer' as 'any person . . . employing any individual in any occupation, industry, trade, business or service' or 'any individual . . . acting as employer.'  The definition of 'employed' under the NYLL is that a person is 'permitted or suffered to work.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) (citations omitted) (quoting N.Y. Lab. Law. §§ 2(7), 190(3), 651(6)).[3]  This definition is both "circular," *Polanco v. Bensonhurst Rest. Corp.*, No. 16-CV-1085 (ILG) (CLP), 2021 WL 1254445, at *2 (E.D.N.Y. Apr. 5, 2021), and "very broad," *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608 (SLC), 2020 WL 1130765, at *5 (S.D.N.Y. Mar. 9, 2020).  Given this broad definition, the Second Circuit uses a four-part "economic reality" test to assess whether an entity or person functions as a plaintiff's employer. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66-67 (2d Cir. 2003).  It turns on whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled

---

[3]  Neither the New York Court of Appeals nor the Second Circuit has resolved "whether the standard for determining if someone is an employer is the same under both the NYLL and" the Fair Labor Standards Act ("FLSA"), but the relevant statutory language "is nearly identical," *Hong v. Quest Int'l Limousine, Inc.*, No. 19-CV-04336 (SN), 2021 WL 2188149, at *3 (S.D.N.Y. May 28, 2021) (internal quotation marks omitted), and "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)," *Perez v. Rossy's Bakery & Coffee Shop, Inc.*, No. 19-CV-8683 (SLC), 2021 WL 1199414, at *7 (S.D.N.Y. Mar. 30, 2021) (internal quotation marks omitted).  Accordingly, courts in this Circuit have interpreted "'employer' under the NYLL in the same way they interpret 'employer' in the" FLSA.  *Solis v. ZEP LLC*, No. 19-CV-4230 (JGK), 2020 WL 1439744, at *7 (S.D.N.Y. Mar. 24, 2020); *accord Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018 (PAE), 2019 WL 633355, at *5 n.5 (S.D.N.Y. Feb. 14, 2019) ("Courts in this District regularly apply the same tests to determine whether entities are joint employers for purposes of the FLSA and NYLL." (internal quotation marks omitted)).  In the discussion that follows, the Court therefore relies on both NYLL and FLSA cases.

employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139. "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question." *Id.*; *accord Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).

In evaluating whether an individual official may be liable as an "employer," courts consider "two other factors" on top of these four: "the scope of the individual's 'operational control' over 'employment-related factors such as workplace conditions and operations, personnel, or compensation' . . . [and] the individual's 'potential power,' *i.e.*, the extent to which he has authority to control employees, even if he does not exercise it." *Vasto v. Credico (USA) LLC*, No. 15-CV-9298 (PAE), 2016 WL 4147241, at *4 (S.D.N.Y. Aug. 3, 2016) (quoting *Irizarry*, 722 F.3 at 106, 109); *accord Stewart v. Hudson Hall LLC*, No. 20-CV-885 (PGG) (SLC), 2020 WL 8732875, at *4 (S.D.N.Y. Oct. 19, 2020), *report and recommendation adopted*, 2021 WL 735244 (S.D.N.Y. Feb. 24, 2021). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. "The operational control inquiry asks about the relationship between the individual defendant's decision-making authority and the company's activities, as opposed to focusing exclusively on the individual's relationship with the employees themselves. Still, courts must consider the defendant's operational control of the company's *employment* of the relevant plaintiffs, rather than simply operational control of the company as a whole." *Beng Khoon Loo v. I.M.E. Rest., Inc.*, No. 17-CV-2558 (ARR) (RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018).

Significantly, "for purposes of the NYLL, an employee may have multiple 'employers.'" *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *7

(E.D.N.Y. Nov. 25, 2014). "When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable for the [NYLL] violations of all other joint employers." *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 450-51 (S.D.N.Y. 2019). Alternatively, a "'single employer' situation [may] exist[] where two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (internal quotation marks omitted); *see, e.g.*, *Griffin v. Sirva Inc.*, 835 F.3d 283, 292-93 (2d Cir. 2016) (explaining the conceptual distinction between "joint employers" and a "single integrated enterprise"). "[I]n the context of affiliated entities within a corporate family, courts in this District have sometimes applied . . . the single-integrated-enterprise test." *Hsieh Liang Yeh*, 2019 WL 633355, at *6 (collecting cases). It requires courts to "consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (quoting *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *1 (S.D.N.Y. May 18, 2016)). "Where the single-integrated-enterprise theory applies, courts may impose liability for a violation 'not only on the nominal employer but also on another entity comprising part of the single integrated employer.'" *Id.* (quoting *Arculeo*, 425 F.3d at 198). "The doctrine applies in extraordinary circumstances where [the] plaintiff demonstrates sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 134 (S.D.N.Y. 2020) (internal quotation marks omitted).

More specifically for present purposes, "[c]ourts applying the single integrated enterprise tests to restaurants consider whether separate venues have, *inter alia,* 'common decor, name, menu, and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses.'" *Hsieh Liang Yeh*, 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019) (quoting *Khereed v. W. 12th Rest. Grp.*, No. 15-CV-1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016)). "[I]n the end," however, "the decisive factor as to whether a named defendant is responsible for [NYLL] violations as to a particular plaintiff turns on control, whether formal or functional." *Id.* Thus, "[c]ourts must dismiss complaints against defendants within a broader alleged enterprise that lack a nexus suggesting control of the plaintiff at hand: for example, where the plaintiff fails to allege that he worked at the other locations in the enterprise, that he transferred items between those stores, or that he communicated with anyone at those stores." *Hong v. JP White Plains, Inc.*, No. 19-CV-5018 (NSR), 2021 WL 1226566, at *6 (S.D.N.Y. Mar. 31, 2021) (cleaned up); *accord Hsieh Liang Yeh*, 2019 WL 633355, at *8; *see also Bravo v. Established Burger One, LLC*, No. 12-CV-9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) ("'[C]ompanies that are part of an "integrated enterprise" or "engaged in a joint venture" may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures' . . . . [D]espite alleging 'an "integrated enterprise," Plaintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the . . . Defendants and themselves." (quoting *Lopez v. Acme Am. Env't Co.*, No. 12-CV-511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012))).

9

## B. Whether Stephen Starr Was Weiss's Employer

Whether the Complaint plausibly alleges that Starr was Weiss's "employer" within the meaning of the NYLL is a close call, but the Court concludes that it does. As noted above, the Complaint alleges that Starr "is the owner, founder, and CEO of Corporate Defendants" and that he "had and exercised control over the employment terms and conditions of" Weiss and others similarly situated to him, including "the power and authority to (and could also delegate to managers and supervisors the power to) (i) hire and fire employees, (ii) determine their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of their employment." Compl. ¶ 27. These allegations are somewhat conclusory and arguably would not suffice on their own, but Weiss backs them up with public statements that Starr himself has made in interviews and company videos. In particular, Starr explained that "[a]ttention to detail is the most important tenet of customer service" and "[i]f [he] go[es] out and notice[s] one mistake, the dish is off or executed poorly, one paint chip, one piece of trash on the floor . . . that's it." ECF No. 21-9, at 2; *see* Compl. ¶ 28. A 2018 *Food & Wine* article featuring Starr noted that while "there's an infrastructure in place to keep Starr Restaurants running smoothly and allow its head honcho to step away from the day-to-day mechanics," Starr "doesn't seem wired for pulling back" and is "still interviewing potential servers." Compl. ¶ 29; *see* ECF No. 21-10. "His vision, married to an unremitting attention to minutiae," the article continues, "has gotten him this far, but it requires a level of focus on detail bordering on monomania, not to mention a lot of micromanaging." Compl. ¶ 29; *see* ECF No. 21-10. And in a video "on Starr Restaurants' YouTube channel," Starr stated: "My mantra is to be concerned with every little detail" and

10

"[o]ur philosophy is that people should learn all jobs. So if you're a manager you come in and work as a dishwasher for a week or two. You'll come in and work as a busboy." Compl. ¶ 30.

It is true that "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer.'" *Irizarry*, 722 F.3d at 111. But "evidence showing an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employees." *Id.* at 110 (cleaned up). And in any event, Weiss goes beyond that by alleging "some involvement" on Starr's part "in the company's employment of the employees" through his own public statements describing his role. *Id.* Nor does it matter that Weiss does not allege that Starr personally hired him or supervised him, as employer status "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman*, 172 F.3d at 139. Instead, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the" NYLL. *Id.*; *accord Lopez*, 2012 WL 6062501, at *6 ("Even though [the defendant] did not hire any of the [p]laintiffs, control may be restricted, or exercised only occasionally. It does not matter that a defendant has delegated his powers to others. What is critical is that the defendant has those powers to delegate." (cleaned up)). "Taken together," Weiss's "allegations raise a reasonable expectation that discovery will reveal evidence that" Starr was Weiss's "employer" within the meaning of the NYLL. *Maria v. El Mambi Rest. Corp.*, No. 20-CV-3707 (JPO), 2021 WL 2337577, at *3 (S.D.N.Y. June 8, 2021) (cleaned up).

*Stewart*, cited by both sides, is instructive. There, the plaintiff, a cook hired by Hudson Hall LLC who had worked at multiple locations within Mercado Little Spain, a group of

11

"restaurants, bars, and kiosks . . . located at 10 Hudson Yards in Manhattan," sought to hold Jose Andrés, the owner and principal of the relevant corporate defendants, liable as an employer under the FLSA and NYLL.  *See Stewart*, 2020 WL 8732875, at *2.  The court held that the plaintiff had adequately alleged "specific examples of Andrés' exercise of control over employees," pointing to Andrés's "public statement on Twitter, after aligning himself with Mercado Little Spain . . . acknowledg[ing] an error in how some of its employees were paid and represented that 'we're correcting it today' . . . and "includ[ing] himself in those who made the 'difficult decision to temporarily close Mercado Little Spain' due to COVID-19, before detailing the modified operating schedule and reassuring employees about their continued pay and benefits."  *Id.* at *9; *see Stewart*, 2021 WL 735244, at *8 (adopting the Report & Recommendation and affirming that "Andrés's statements in his Twitter posts and on the Mercado Little Spain website demonstrate his control over [the p]laintiff's employment" (internal quotation marks omitted)).  Here too, Starr's public statements allow the Court to infer that "he had operational control over employees [at affiliated restaurants, including Buddakan] insofar as his role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Stewart*, 2020 WL 8732875, at *9 (internal quotation marks omitted).  Thus, at this early stage of the litigation, Weiss has sufficiently alleged that Starr was his "employer" within the meaning of the NYLL.

**C.  Whether the Other Starr Restaurants Were Weiss's Employers**

That leaves whether the Complaint plausibly alleges that the Other Starr Restaurants also qualified as Weiss's "employers" for purposes of the NYLL.  Weiss contends that it does, arguing that they constituted a single integrated enterprise such that each can be held liable as his "employer" under the NYLL.  *See* Pl.'s Opp'n 4-10.  The Other Starr Restaurants counter that

12

Weiss "has not plausibly demonstrated how each — let alone all — of the nine [Other Starr Restaurants] had any control over the terms and conditions of *his* employment *at Buddakan*." ECF No. 24 ("Defs.' Mem."), at 12; *see also id.* at 7-17; ECF No. 29 ("Defs.' Reply"), at 1-4.

Defendants have the better of the argument. For starters, several of Weiss's allegations are entirely conclusory. For example, he alleges that "[e]mployees are interchanged among and transferred between Defendants' restaurants, as well as supplies." Compl. ¶ 17. That allegation "would have some weight, if it were supported by factual content. . . . But the allegation here is not supported by the pleaded facts . . . [T]here is no claim that a defendant 'transferred' [the] Plaintiff or any other . . . [specific] employee." *Huer Huang*, 459 F. Supp. 3d at 589; *see also Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC), 2020 WL 7774345, at *4 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff's allegation concerning a single employee's concurrent employment at Baumgart's Café and Lilli and Loo, standing alone, is patently insufficient to demonstrate that Baumgart's Café operates as part of a single integrated enterprise with Lili's 57 and Lilli and Loo."); *Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018) ("The allegation that the Dream Hotel Group 'transfers employees between hotels' is alone insufficient to draw an inference of centralized control, particularly because Plaintiff herself worked at only one location and the Amended Complaint nowhere alleges that the Corporate Defendants treated their employees interchangeably or subjected them to the same policies.").

Weiss points to the use of "a single 'Starr Restaurant' gift card, which is valid for use at all of Defendants' restaurants," and the fact that all of the restaurants "are advertised on the Starr Restaurant website" and use emails ending with "@starr-restaurants.com" as evidence of Defendant's "interrelation of operations." Pl.'s Opp'n 7. But "it is not uncommon for two or

13

more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes.  That does not make each responsible for the labor law violations of the other." *Huer Huang*, 459 F. Supp. 3d at 587 (internal quotation marks omitted) (collecting cases).  Such evidence may establish that two or more businesses "share a common purpose," but it does not, without more, "establish an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer sufficient to hold one corporation liable for the [NYLL] violations of the other corporation." *Id.*; *see also Hsieh Liang Yeh*, 2019 WL 633355, at *8 (rejecting a single-integrated-enterprise theory even though, among other things, the defendant enterprise had "a centralized website which provide[d] a common platform for menu information, reservations, online ordering and contact" and "[v]arious . . . locations . . distribute[d] advertising cards that list[ed] the locations of each . . . restaurant" (cleaned up)).

Closer to the mark, Weiss points to statements made by third parties online as evidence of a centralized control of labor relations.  One such statement, on glassdoor.com, recounts a multi-step interview process to become a server at a Starr Restaurants location.  *See* Compl. ¶ 22 ("I applied online and got a call within 2 weeks to interview.  It was a three step interview process.  One with the assistant manager, manager, and then one at Starr headquarters.").  Another indicates that "employee benefits [are the same] across all the Starr Restaurants Group locations."  *Id.* ¶ 23.  A third, posted in 2019 on lensa.com, advertises a "Vice President of Human Resources" position at Starr Restaurants, which Weiss claims "makes it clear that a single human resources department exercises vast control over the policies and practices of all the individual Restaurants, since the Vice President is 'responsible for providing leadership in developing human resources strategy and participation in tactical execution in support of the

14

overall business plan of the organization, specifically in the areas of compliance, employee relations, payroll, talent acquisition and retention, performance management, succession planning, organizational development, benefits and compensation.'" *Id.* ¶ 25.

Even drawing all inferences in favor of Weiss, however, these allegations and exhibits do not provide adequate support for a single-enterprise theory of liability. For example, the benefits-related comment on glassdoor.com from which Weiss quotes, *see id.* ¶ 23, was made by a "[f]ormer [h]ost in Philadelphia, Pennsylvania," ECF No. 21-7, at 4 — that is, by a former employee of one of the many Starr-affiliated restaurants in "locations in multiple cities, states, and countries," not one of the Other Starr Restaurants, all of which are located in New York City, Compl. ¶ 5. The vice president job listing was posted in September 2019, but Weiss's employment ended five years earlier, in October 2014. *See id.* ¶¶ 24, 47; *cf. Huer Huang*, 459 F. Supp. 3d at 588 ("Whatever relationship Si had with the restaurants over two decades ago does not establish an interrelation of operations or centralized control of labor relations today."). In any event, "[a] common benefits package speaks only to economies of scale and not to centralized control of labor relations" and "the fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that the parent exercised centralized control over the subsidiary's employees," let alone that multiple subsidiaries of a single parent, the situation here, qualify as a single "employer." *Benzinger*, 447 F. Supp. 3d at 135 (cleaned up).

At bottom, missing from the Complaint is any allegation permitting "the inference that" the Other Starr Restaurants "possessed the power to control" Weiss. *Huer Huang*, 459 F. Supp. 3d 580, 590 (S.D.N.Y. 2020) (internal quotation marks omitted); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-802 (GBD), 2018 WL 1166626, at *9 (S.D.N.Y. Feb. 15, 2018) ("[A]llegations of common ownership and common purpose, without more, do not answer the

15

fundamental question of whether each defendant controlled Plaintiff[] as [an] employee[]." (cleaned up)). Indeed, Weiss "entirely leaves out the relationship that [he], as employee, had to the [restaurant] locations besides the one location at which [he] actually worked." *Chui-Fan Kwan*, 2018 WL 6655607, at *4 (cleaned up). In short, his "complaint is devoid of facts suggesting any connection between him and [the Other Starr Restaurants] . . . . It supplies no basis for bringing them into this lawsuit which, at present, contains allegations of violations of law solely as to him." *Hsieh Liang Yeh*, 2019 WL 633355, at *8; *accord Hong*, 2021 WL 1226566, at *6 ("[T]he Court must dismiss the claims against Corporate Defendants JP BRONXVILLE and JP SCARSDALE, . . . because Plaintiff has not alleged that he ever interacted with, worked for, or was controlled by the Bronxville or Scarsdale locations."); *Stewart*, 2020 WL 8732875, at *6 (dismissing a single-enterprise theory of liability, "even assuming Holdings and Think are part of a broader enterprise, because [the plaintiff] does not allege that Holdings or Think had any connection to him or control of *his* employment"). Accordingly, Weiss's claims against the Other Starr Restaurants must be and are dismissed.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss is GRANTED as to the Other Starr Restaurants and DENIED as to Starr. Moreover, the Court declines to grant Weiss leave to amend his Amended Complaint *sua sponte*. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, Weiss does not request leave to amend or suggest that he is in possession of facts that would cure the problems with his claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014

WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Moreover, the Court granted Weiss leave to amend his original complaint in response to the Moving Defendants' first motion to dismiss and explicitly warned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 20; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

Starr shall file his Answer **no later than two weeks from the date of this Opinion and Order**. Additionally, the initial pretrial conference is REINSTATED for **August 12, 2021,** at **2:30 p.m.** The conference will be governed by the Court's Order of October 2, 2020, ECF No. 5, and the parties should prepare accordingly, including by submitting a joint status letter and proposed Case Management Plan no later than the Thursday prior to the conference.

The Clerk of Court is directed to terminate all Defendants *other* than Buddakan, Starr Restaurants, and Starr (that is, Havatequila Restaurant Partners, LLC; Ery North Tower RHC Tenant LLC; Dr. Howard Dr. Fine, LLC; Moe Larry Cheese, LLC; Morimoto NY Venture, L.P.; Train Design, LLC; Sur Organization, LLC; 26th Street Restaurant, LLC; and SRHG West, LLC) as parties and to terminate ECF No. 23.

SO ORDERED.

Dated: July 21, 2021
New York, New York

_____
JESSE M. FURMAN
United States District Judge